UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                           Case No. 13-CR-123

ROBERT L. LEO, JR.,

    Defendant.

ORDER OVERRULING OBJECTION, ADOPTING MAGISTRATE JUDGE'S
RECOMMENDATION (DOC. 31), AND DENYING MOTION TO SUPPRESS (DOC. 12)

Robert L. Leo, Jr. moves to suppress evidence obtained from a search of his backpack by Racine police. Magistrate Judge Nancy Joseph recommends denial of the motion, and this court agrees, notwithstanding Leo's objection.

Regarding motions to suppress evidence, a magistrate judge may propose findings and make recommendations. § 636(b)(1)(A), (B); Fed. R. Crim. P. 59(b)(1). A district court must review de novo the recommendations of the magistrate judge to which a party timely objects. 28 U.S.C. § 636(b)(1)(C); Fed. R. Crim. P. 59(b)(2), (3). However, portions of a recommendation to which no party objects are reviewed for clear error. *Johnson v. Zema Sys. Corp.,* 170 F.3d 734, 739 (7th Cir. 1999).

The pertinent facts are set forth in the magistrate judge's recommendation. Leo does not dispute the magistrate judge's factual determinations; he objects only to the magistrate judge's application of relevant law to those facts. The court notes that the United States does not object to the magistrate judge's findings regarding a lack of consent to search.

After reviewing the evidentiary hearing transcript and the magistrate judge's recommendation the court finds no clear error. Consequently, the court adopts the

magistrate judge's recitation of facts and will not repeat them except as necessary for this decision.

Leo does not contest that reasonable suspicion existed for police to stop him in accordance with *Terry v. Ohio*, 392 U.S. 1 (1968). Nor does he contest that a *Terry* pat-down frisk was warranted under the circumstances. (*See, e.g.*, Doc. 26 at 8-9; Doc. 35 at 1 ("Leo concedes that officers had reasonable suspicion that he may have attempted a burglary and that he might have had a handgun in his backpack.").) Instead, he contends only that police exceeded the scope of a permissible *Terry* frisk by looking inside Leo's backpack. (Doc. 26 at 9.)

The court overrules this objection. In *Terry*, the Supreme Court upheld a protective frisk for weapons when an officer possesses a reasonable, articulable suspicion criminal activity is afoot and that an individual is armed and dangerous. *See also United States v. Richmond*, 641 F.3d 260, 262 (7th Cir. 2011). To determine whether a stop-and-frisk was valid, the court looks at the totality of the circumstances. *Id.*; *see United States v. Tinnie*, 629 F.3d 749, 751 (7th Cir. 2011). Whether reasonable suspicion exists depends on the circumstances known to the officer at the time of the stop, including the experience of the officer, the behavior and characteristics of the suspect, and the time and location of the stop. *Id.* at 751-52.

In *Michigan v. Long*, 463 U.S. 1032 (1983), the Court found permissible a protective search of the passenger compartment of a vehicle during a *Terry* stop because officers had reason to believe that the vehicle contained a weapon potentially dangerous to the officers. *Id.* at 1034-35. In *Long*, officers observed a car driven erratically and at excessive speed;

2

the car then swerved off the road into a ditch. When the officers approached to investigate, the driver had exited the car and had approached officers, leaving the driver's door open and had failed to respond immediately to requests to produce his license. *Id.* at 1035-36. When the driver turned toward the open car door, officers followed and saw a large hunting knife on the floorboard of the driver's side of the car. *Id.* at 1036. The Supreme Court found that the viewing of the weapon justified the officers' protective search of the interior of the vehicle during the lawful *Terry* stop. *Id.* at 1036-37, 1051.

The protective search in *Long* extended beyond the frisk of a person alone. *Id.* at 1045-47. The Court recognized that suspects may injure officers and others through their access to weapons, even though the weapons may not be on their persons. *Id.* at 1048. Similarly, the Seventh Circuit has recognized that a protective search for weapons during a *Terry* stop can extend to the area within the suspect's control, in particular to a briefcase in the suspect's hands. *Cady v. Sheahan*, 467 F.3d 1057, 1061-62 (7th Cir. 2006).

The principles of *Long* and *Cady* apply in the present case. Here, the officers had the requisite reasonable suspicion to believe that Leo had a gun in his backpack. Officer Ortiz had thought that Enrique Aranda, another Hispanic man, who turned out to be Robert Leo, looked suspicious. Moreover, Ortiz was monitoring their activities at 1020 Grand Avenue when a dispatch report issued about an armed burglary attempt by two Hispanic men at the same address. The 9-1-1 caller regarding the burglary stated that one man possibly had a handgun, and that the man changed from a black to a red hooded sweatshirt and may have placed the handgun in a backpack.

When Ortiz circled in his car, he saw the same two men, one now wearing a red hooded sweatshirt rather than a black one, headed toward a Head Start facility. Ortiz exited

3

his car and told the men to stop, but Aranda and Leo kept walking across the school parking lot. Officer Seeger then joined Ortiz. The officers placed Aranda and Leo in handcuffs and patted down their persons. During the events in the parking lot of the Head Start facility the officers received an update from dispatch saying that the 9-1-1 caller had confirmed that the officers had stopped the two people who had attempted the break-in at 1020 Grand Avenue.

Aranda and Leo exactly matched the description of the two armed burglary suspects. Finding no weapons during pat-downs of Aranda's or Leo's bodies, and with the 9-1-1 caller's mention of the gun and the backpack, the officers reasonably believed that the weapon was in the backpack. Hence, the officers' protective search of the backpack was reasonable in the circumstances, for the safety of the officers and the children and adults at the Head Start facility.

Leo contends that because he was handcuffed the gun inside the backpack posed no risk to the officers. But Leo was not under arrest, and the officers had to release him if they lacked probable cause for an arrest. "If a suspect is 'dangerous,' he is no less dangerous simply because he is not arrested." *Long*, 463 U.S. at 1050.

The *Long* Court noted that such a scenario means the risk to officers in a *Terry* stop may *exceed* that of an arrest and can justify a protective search for weapons:

> [I]f the suspect is not placed under arrest, he will be permitted to reenter his automobile, and he will then have access to any weapons inside. Or, as here, the suspect may be permitted to reenter the vehicle before the *Terry* investigation is over, and again, may have access to weapons. In any event, we stress that a *Terry* investigation, such as the one that occurred here, involves a police investigation "at close range," when the officer remains particularly vulnerable in part *because* a full custodial arrest has not been effected, and the officer must make a "quick decision as to how to protect himself and others from possible danger . . . ." In such circumstances, we have not required that officers adopt alternative means to ensure their safety in order to avoid the intrusion involved in a *Terry* encounter.

4

*Id.* at 1052. The Court found that the officers in *Long* were justified in taking reasonable measures to eliminate the risk to themselves and others when Long was released to return to his car. *Id.* at 1051. As noted in *Smith v. Ohio*, 494 U.S. 541, 542 (1990), the Fourth Amendment permits only a brief detention of property on the basis of reasonable suspicion and requires a warrant based on probable cause for a search of that property—"except in certain well-defined circumstances." *Long* indicates that a self-protective action necessary for the officer's safety can be such a circumstance.

The key in evaluating an officer's investigative or protective conduct under *Terry* is the reasonableness under all the circumstances. *Long*, 463 U.S. at 1051. Finding for Leo would mean that officers should have handed a suspected burglar a backpack that they reasonably believed contained a gun, while standing in close proximity to him in the parking lot of a Head Start facility. Such a finding would be unreasonable. These officers reasonably conducted a protective search for a gun before releasing Leo and handing him the backpack in the parking lot of a facility where young, vulnerable children were, apparently, present.

Leo contends that *Arizona v. Gant*, 556 U.S. 332 (2009), circumscribed the scope of *Long* and prior Seventh Circuit cases such as *Cady* and *United States v. Askew-Bell*, 306 F. App'x 292 (7th Cir. 2009),[1] and, therefore, restricted these officers' ability to look through Leo's backpack because Leo was handcuffed. *Gant* addressed the lack of exigency and

---

[1] *Askew-Bell* involved the seizure of a purse during a *Terry* stop. The case is not precedential, but the Seventh Circuit found the seizure of the purse permissible, noting that "[a]n officer may search a suspect for weapons on her person or within her control during a *Terry* stop so long as 'a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger.'" 306 Fed. App'x at 295 (quoting *Cady*, 467 F.3d at 1061-62). The court found that the search of the purse, while Askew-Bell was handcuffed, was permitted as search incident to arrest. *Id.* at 296.

5

need for a protective search after someone is arrested, handcuffed, and placed in the rear seat of a squad car. But *Gant* does not restrict *Long* in regard to a *Terry* stop in flux as to control over the suspect. The Supreme Court indicated that the *Long* exception remains valid and authorizes a vehicle search under circumstances where safety concerns demand. *Gant*, 556 U.S. at 346-47. Further, the Court acknowledged that when an officer cannot fully effectuate an arrest and a real possibility of access to the vehicle remains, a search of the vehicle incident could be reasonable under the Fourth Amendment. *Id.* at 343 n.4. Again, here, Leo was not arrested and far from his backpack, and the officers were faced with returning a possibly loaded revolver to a possible burglar in close proximity to children, adult third-parties or any police officers. Leo's ability to retake control over the backpack continued. Moreover, the Seventh Circuit in *United States v. Hopewell*, 498 F. App'x 609 (7th Cir. 2012), *cert. denied*, 134 S. Ct. 120 (2013), did not suggest that *Gant* restricted officers from searching a backpack for a loaded revolver during at *Terry* stop when exigent circumstances (including, as Leo says, the need to return the bus to service) existed, even though Hopewell was handcuffed.[2]

A variant of the *Gant* argument is Leo's assertion that the officers had time to seek a search warrant by telephone. However, the parties do not contend that there was probable cause to arrest Leo or to search the backpack where the officers found the gun. Again, the scope of a post-arrest search while an arrestee is fully secured is not the issue in this case; instead, the issue is the scope of a protective search or exigent circumstances search for officers' and others' safety during a *Terry* stop.

---

[2] *Hopewell*, like *Askew-Bell*, is not precedential but nevertheless supports this court's decision.

6

Leo suggests that the officers' concerns over an active shooter situation at a school were exaggerated because Officer Ortiz knew Aranda's mother worked at the Head Start facility. (*See* Doc. 27 at 3-4 ("[T]he circumstances known to Officer Ortiz suggested that Leo was simply accompanying a friend to his mom's job.").) But the fact that Ortiz knew Aranda's mother worked at the Head Start facility makes no difference. Ortiz did not know who the other man (Leo) was, he had sufficient reason to believe the men had just attempted an armed burglary, he had sufficient reason to believe the men had a gun in a backpack, and he saw the men heading toward a school. The situation was no less worrisome to the officers because Aranda's mother may have been inside the building.

At a court hearing and in his reply brief regarding his objection, Leo emphasized that gun possession is generally legal in Wisconsin. He points to Circuit Judge Hamilton's recent statements regarding how Fourth Amendment law has "been evolving to provide expanded protection for individual possession of firearms in public." *United States v. Williams*, 731 F.3d 678, 691 (7th Cir. 2013) (Hamilton, J., concurring). As Judge Hamilton wrote:

> Visible guns may be disturbing to those nearby, but that's the point of the new Wisconsin statute. Merely possessing or displaying a gun without criminal or malicious intent does not violate the law, even if the display is disturbing or frightening to others. A *Terry* stop does not require probable cause for an arrest, of course, but it still requires reasonable suspicion of genuinely criminal conduct. Based on the new Wisconsin law, that is hard to find on this record.

*Id.* at 692-93.

But *Williams* is inapposite for two reasons. First, Judge Hamilton was discussing whether a *Terry* stop was justified. Here, Leo has consistently conceded that the *Terry* stop

7

was justified. Judge Hamilton's comments provide no help for Leo regarding what the scope of a pat-down frisk may be during a valid *Terry* stop.

Second, the *Williams* facts included no apparent illegality before the stop and frisk. In *Williams*, a 9-1-1 caller asserted that twenty-five individuals behind a bar were loud and that three or four of the individuals held guns, though none was threatening the others. When officers arrived they found eight to ten people acting appropriately and walking away from each other. *Id.* at 680 (main opinion), 691 (Hamilton, J., concurring). Such benign circumstances do not exist in this case. Here, a 9-1-1 caller reported an attempted armed break-in by a man matching Leo's description exactly. According to the report the officers received from dispatch, Leo was not innocently holding a handgun in public. Instead, he was using it while attempting burglary. The officers could reasonably believe that Leo posed a danger to themselves and those around them.

The protective search of the backpack was permissible regardless of whether the Head Start facility constitutes a school under state and federal laws regarding gun possession. Thus, the court need not address that dispute between the parties.

For these reasons, this court adopts the magistrate judge's proposed findings and recommendation (Doc. 31). Thus,

IT IS ORDERED that Leo's motion to suppress (Doc. 12) is denied.

Dated at Milwaukee, Wisconsin, this 6th day of January, 2014.

BY THE COURT

/s/ C.N. Clevert, Jr.
C.N. CLEVERT, JR.
U.S. DISTRICT JUDGE

8